UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ERIN JOHNSON, ) | |
| on behalf of plaintiff and a class ) | Case No. 2:16-CV-00330-PPS-APR |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ENHANCED RECOVERY COMPANY, LLC, ) | |
| Defendant. ) | |

**DEFENDANT, ENHANCED RECOVERY COMPANY, LLC'S BRIEF
AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
<u>DISMISS THE COMPLAINT</u>**

## I. Introduction

### A. Issues before the Court

On or about April 21, 2016, Enhanced Recovery Company, LLC ("ERC") sent plaintiff, Erin Johnson ("Johnson" or Plaintiff) a letter regarding an overdue obligation in her name placed with ERC for collection by its customer, Sprint. This letter (the "Letter"), which is attached to the Complaint as Exhibit A, informed Plaintiff that ERC, on behalf of its customer, would accept payment in a reduced amount to completely satisfy the outstanding obligation. In doing so, ERC utilized Seventh Circuit safe harbor language for making such an offer in a non-misleading manner. Additionally, the Letter informed Plaintiff, consistent with the Fair Credit Reporting Act requirements, that her delinquent account was permitted to be reported to the national credit bureaus.

Rather than take advantage of this opportunity to realize a savings on the amount owed, or alternatively, exercise her rights to dispute the account or request validation from ERC,

Plaintiff filed a claim on behalf of herself and a putative class of similarly situated persons under three provisions of the Fair Debt Collection Practices Act (the "FDCPA"). Plaintiff alleges the Letter falsely represented the character or legal status of the obligation, used a false representation or deceptive means to collect a debt, and used a false, deceptive, or misleading representation or means to collect a debt.

These claims fail and the complaint must be dismissed, however, because it is clear on the face of the Letter that ERC has not engaged in any of these prohibited practices. The Letter simply contains an offer to allow Plaintiff to settle the amount she owes to Sprint for a reduced amount - a common practice in the collection industry which is fully compliant with the FDCPA - and further includes specific safe harbor language approved by the Seventh Circuit to avoid confusion over such offers. Furthermore, the additional information contained in the Letter neither confuses, nor misleads, the unsophisticated consumer because the statements are true, accurate, and merely provide additional, clarifying information regarding the settlement offer to ensure that the offer itself is not misleading. When the statement at issue is read in context, and recognizing that the Letter itself evidences the fact that collection activity has already begun, the statements reflect truisms that would be obvious to any consumer and thus, are not actionable under the FDCPA. Finally, any alleged misrepresentation is immaterial and would fail to mislead the unsophisticated consumer, further establishing that the Letter is not violative of the FDCPA. For these reasons, Plaintiff's claims should be dismissed, with prejudice.

### B.  Legal Standard

In ruling on a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations contained in the complaint. *Bravo v. Midland Credit Mgmt.*, 812 F.3d 599, 601 (7th Cir. 2016) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to

meet the plaintiff's Rule 8 obligations, the complaint must "(1) describe[] the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggest[] that the plaintiff has a right to relief above a speculative level." *Id.* at 601-02 (*citing Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A Rule 12(b)(6) motion may attack the sufficiency of the allegations themselves or the legal theory upon which the plaintiff bases its suit. *See Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012). A district court need not grant the plaintiff leave to amend the complaint if it is established by the face of the complaint, or its exhibits, that amendment would be futile. *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015).

In resolving a Rule 12(b)(6) motion, the court is constrained to consider the complaint and the exhibits attached thereto. *Runnion v. Girl Scouts of Greater* Chicago, 786 F.3d 510, 528 n.8 (7th Cir. 2015). "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." *Ogden Martin Sys. of Indianapolis v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999). "[I]t is indeed true that '[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.' " *Id* (*quoting In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).   Such can be the case where the plaintiff brings claims under the FDCPA based on letters attached to the complaint, when the language of the letter demonstrates no such violation. *See, e.g.*, *Bravo*, 812 F.3d at 604; *Zemeckis*, 679 F.3d at 637.

II. **Plaintiff's claims must be dismissed because the Letter contains the Seventh Circuit's safe harbor language and is not misleading in context.**

The Letter presented an offer for Plaintiff to resolve her overdue obligation with ERC's customer, Sprint, for a discount of approximately twenty percent of the amount Plaintiff owed. If Plaintiff wished to take advantage of this offer, and realize the full discount offered in the Letter,

3

she was requested to remit payment by May 26, thirty-five days following the date of the Letter. In doing so, ERC utilized safe harbor language to prevent any confusion regarding whether Plaintiff would be able to later settle the account for less than the full amount due if she did not take advantage of this offer. Furthermore, the remainder of the letter was accurate, without misleading or deceiving the least sophisticated consumer, and any interpretation otherwise is unreasonable as a matter of law and inconsistent with Seventh Circuit case law as well as the plain text of the FDCPA.

### A. The Letter contains safe harbor language expressly adopted by the Seventh Circuit for the presentation of an opportunity to Plaintiff to settle the account.

The Letter contains safe harbor language expressly recommended and adopted by the Seventh Circuit for providing consumers with an opportunity to receive a discount off the total amount owed to the creditor. *See Evory v. RJM Acquisitions, Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007). In *Evory*, the Seventh discussed the practice of offering settlement options to consumers in debt collection letters. *Id.* at 772. After noting it was "apparently common" for collectors to make settlement offers to consumers, the court began its analysis by noting "[t]here is nothing improper about making a settlement offer." *Id.* at 775. The Seventh Circuit's concern lay not in the mechanism, but in a consumer's potential assumption that if he or she did not take advantage of the offer during the stated time period then he or she would have no further opportunity to settle the debt for less than the full amount. *Id.*

To eliminate this potential confusion, and preserve the benefit to consumers of receiving settlement opportunities, the court provided safe harbor language for collectors to use when making settlement offers. *Id.* It reads simply: "[w]e are not obligated to renew this offer." *Id.* at 776. The court further noted use of its safe harbor language renders the statement non-deceptive

as a matter of law and any claim of deception the proper subject of a motion to dismiss. *Id.* at 777.

Here, the Letter used the very safe harbor language provided by the *Evory* court. The Letter states:

> We are willing to reduce your outstanding balance by offering discounted options.
>
> > Option 1: Pay the settlement of $875.78, please remit by May 26, 2016.
> > Option 2: Pay the settlement of $930.51, payable in 2 monthly payments of $465.26.
> > Option 3: Pay the settlement of $985.25, payable in 3 monthly payments of $328.42.
>
> We are not obligated to renew this offer.

Compl. at Exh. A. The Letter thus makes clear it is presenting an opportunity for the consumer to pay less than the amount owed to the creditor and by using the *Evory* safe harbor language, prevents any assumption that the consumer must pay by May 26 in order to receive any reduction in payment on the account. In fact, the Letter includes additional payment options, Options 2 and 3, which do not, on their face, contain any deadline. The absence of such a deadline on these options further prevents the consumer from assuming that he or she could not realize a savings on the total amount due if not paid by May 26.

The settlement offer in the Letter cannot constitute a false, deceptive, or misleading statement/means in collecting a debt as a matter of law, because ERC used the exact safe harbor language provided by the Seventh Circuit.

**B. The remainder of the Letter is neither confusing nor misleading.**

The balance of the Letter with which Plaintiff takes issue is a notice that the delinquent account is permitted to be reported to consumer reporting agencies, and a separate statement that "payment of the offered settlement amount will stop collection activity on this matter." *Id.*

Neither of these two statements, whether read in isolation or together with the rest of the Letter, is false or deceptive.

The first statement, regarding reporting of the account to national credit bureaus, is entirely true and compelled by the Fair Credit Reporting Act. The statement reads, "[t]his letter serves as notification that your delinquent account may be reported to the national credit bureaus." *Id.* Even to an unsophisticated consumer, this statement merely informs the consumer that the delinquent account is permitted to be reported to one or more credit bureaus.

In fact, the Fair Credit Reporting Act, as amended by the Fair and Accurate Credit Transactions Act of 2003, requires some furnishers of credit information to consumer reporting agencies to inform consumers that negative information may be reported to the credit bureaus. *See* 15 U.S.C.A. § 1681s-2(a)(7).[1] Model disclosures are even provided to ensure compliance with the provision. If the disclosure is provided before reporting, then the safe harbor language states "We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." 12 C.F.R. Part 1022, Appx. B. ERC's notice in its Letter tracks this safe harbor language.[2]

Even if the consumer were to read the permissive "*may*" as merely an indication of possibilities, i.e. synonymous with "*might*," this would not alter the analysis. The account was already delinquent when the Letter was sent, as reflected by the Letter itself. Compl. at Exh. A. Thus, it was permitted to be reported as a delinquent account, or one that is in collections, before the Letter was sent. Additionally, even if the Letter is read as stating the account could be, or

---

[1] These provisions apply to "any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency[.]" 15 U.S.C.A. § 1681S-2(a)(7)(i) (2015). While ERC does not affirmatively argue it falls within the definition of a "financial institution," the disclosure by ERC of this possibility is a benefit to consumers, and ERC's voluntary compliance with the disclosure obligation harms no one.

[2] As a collector, the second sentence of the safe harbor language is not applicable to ERC, as ERC only reports the collection status and the amount due, not late payments and missed payments.

might be, reported to the national credit bureaus, this statement is also true and relays the same information to the consumer. A consumer, who is presumed able to make basic logical inferences[3], would understand that if a debt is permitted to be reported to the credit bureaus, then it follows that it could be, or might be reported. Likewise, an FDCPA compliant statement that the debt might be reported also implies that it is permitted to be reported. Under either "interpretation" the upshot for the consumer is the same. Plaintiff's *interpretation* of the statement that the consumer could avoid the credit reporting of the account by taking action to pay the debt in the next thirty-five days, is not founded on the actual content of the Letter. Rather, such an interpretation would require additional language which simply is not contained in the Letter.

Plaintiff contends the statement offers the consumer an option to <u>prevent</u> credit reporting from occurring by paying the settlement option. However, the statement says no such thing. In fact, the above-quoted statement concerning reporting the account to national credit bureaus contains no statement regarding future action, nor does it communicate a means of preventing such action. Thus, Plaintiff's allegation that her already delinquent account was reported to the credit bureaus prior to the expiration of the deadline for her to pay a reduced amount to settle her account is immaterial, as ERC makes no promise or statement as to how the consumer can prevent credit reporting in the Letter.

This conclusion is bolstered by the context of the Letter. First, it is clear in the Letter that the account was already delinquent when the Letter was sent. It states, "[o]ur records indicate that your balance with Sprint remains unpaid; therefore your account has been placed with ERC for collection efforts." *Id.* Thus, even the unsophisticated consumer, who is presumed to read the

---

[3] See discussion in Part II.C, *infra.*

entirety of a collection letter[4], would not be misled into thinking that the account would only be delinquent upon expiration of the period for taking advantage of the offer to pay the "outstanding balance by . . . discounted options." *Id*.

Further, the statement regarding ending collection activity does not communicate a different meaning. Plaintiff quotes the statement in isolation,[5] but it must be read in the context of the separate paragraph in which it appears. This paragraph states, in full:

> Payment of the offered settlement amount will stop collection activity on this matter. We will inform Sprint once the payment(s) is/are posted. Payment of the settlement amount will not restore your service with Sprint. If you wish to establish service with Sprint at a future date, the remaining balance must be paid in full prior to the consideration of any future services being granted.

*Id.* at Exh. A. Thus, the statement is clear in context that, while payment of the reduced amount will stop collection activity, it will neither restore phone service with Sprint, nor will it make the consumer eligible for reinstatement of such service. If the consumer wishes to receive the benefit of being eligible for future Sprint phone service, the consumer must pay the full amount due to Sprint, and paying the reduced amount will not confer that benefit on the consumer. The statement is included to fully advise the consumer of the effect a partial payment will have to prevent any consumer confusion. The statement does not say, as Plaintiff's interpretation suggests, that no collection activity, past, present or future, will ever take place. For these reasons, the statement cannot serve as the basis for a claim under section 1692e. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("Classifying obligations in a way that helps customers to understand what has happened cannot be condemned as a false statement about a debt's character.").

### C. Plaintiff's interpretation of the statements is unreasonable and contrary to Seventh Circuit precedent under the FDCPA.

---

[4] See discussion in Part II.C, *infra*
[5] *See* Compl. at ¶ 20.

The interpretation of the Letter advanced in the Complaint is contrary to the legal standards applicable in this Circuit. As an initial matter, Plaintiff appears to contend the statement "payment of the offered settlement amount will stop collection activity on this matter" must be interpreted to mean payment will prevent any collection activity from occurring. This is an interpretation that not even the unsophisticated consumer would make.

Courts in the Seventh Circuit are to apply an objective standard to the interpretation of consumer communications based on the interpretation of the "unsophisticated consumer." *Wahl v. Credit Mgmt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009). The *Wahl* court further discussed the standard:

> The "unsophisticated consumer" isn't a dimwit. She may be "uninformed, naive, [and] trusting," but she has "rudimentary knowledge about the financial world" and is "capable of making basic logical deductions and inferences[.]" "Our test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable consumer." So, while the FDCPA is a strict liability statute—a collector "need not be deliberate, reckless, or even negligent to trigger liability"—the state of mind of the reasonable debtor is *always* relevant.

*Id.* (emphasis in original) (internal citations omitted). Further the unsophisticated consumer standard rejects bizarre or idiosyncratic interpretations of collection notices. *Gammon v. GC Servs.*, 27 F.3d 1254, 1257 (7th Cir. 1994) (*quoting Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993)). And the unsophisticated consumer is required to read collection notices with care. *Id.*

In accordance with this standard, the Ninth Circuit recently held that even the unsophisticated consumer is aware of his or her past dealings with the collector regarding the account. *Davis v. Hollins Law*, __ F.3d __ (9th Cir. Aug. 8, 2016).[6] In *Davis*, a consumer and a

---

[6] Case No. 14-16437, 2016 WL 4174747.

particular attorney employed by the collector law firm had engaged in settlement discussions for approximately two weeks. Following these discussions, the attorney left a voicemail message for the consumer stating that it was from "Gregory at Hollins Law." *Id.* at *3. The consumer brought suit under the FDCPA, claiming that the message did not explicitly disclose that it was from a debt collector as required by section 1692e(11). The Ninth Circuit held that the message did not violate the FDCPA, and when considered in the context of their continued discussions, any alleged mistaken belief that the message was not from a debt collector was "bizarre or idiosyncratic." *Id.* at *4. *See also Wahl*, 556 F.3d at 646 ("The unsophisticated consumer, *with a reasonable knowledge of her account's history*, would have little trouble concluding that the 'principal balance' included interest charged by [the collector].") (emphasis supplied).

Thus, under the unsophisticated consumer standard, which the Court must apply in resolving Plaintiff's claims, the consumer is presumed to know the history of his or her communications with the collector, be able to make logical inferences, and read a letter in its entirety. Additionally, the consumer cannot rely on bizarre or idiosyncratic interpretations of communications to support claims.

Plaintiff's contention that the Letter instructs a consumer how to avoid having the account appear on his or her credit report is without any support in the actual text of the Letter, and such an interpretation is bizarre and unreasonable when considered in the context of the Letter. The common understanding of the word "stop" is not to prevent, but "to cause to cease motion, activity, etc."[7]

The Letter itself is evidence that such an interpretation is bizarre and unreasonable, because the Letter establishes that collection activity has already begun. If collection activity has already begun, how could all collection activity be prevented by acceptance of the settlement

---

[7] *See* Webster's New World Dictionary 581 (Pocket Books Paperback ed. 1995).

payment? The Letter twice includes the language provided by section 1692e(11), that the Letter is an "attempt[] to collect a debt. Any information obtained will be used for that purpose." Compl. at Exh. A. As discussed in part II.B, above, it clearly states that the overdue account with Sprint was "placed with ERC for *collection efforts*." *Id.* (emphasis supplied). Thus, in light of these clear pronouncements, it would be unreasonable, and indeed bizarre, for a consumer to interpret "stop collection activity on this matter" to mean prevent collection activity from ever beginning, when the statement is contained in a letter which is itself collection activity. This would defy both the "rudimentary knowledge about the financial world" and capacity for "making basic logical deductions and inferences" that even the unsophisticated consumer is presumed to possess. *Wahl*, 556 F.3d at 645 (*citing Petit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

Furthermore, there is no allegation in the Complaint that the Letter was the initial communication on the account with Plaintiff. Thus, Plaintiff, along with the class of persons whom she wishes to represent, would read the Letter with knowledge that collection activity had already begun as evidenced by the Letter itself as well as any other communications the consumer had already received or would receive during the subsequent thirty-five days. In the Complaint, Plaintiff asserts that "[c]redit reporting is collection activity." Compl. at ¶ 21. Even if that is true, the sending of a collection letter is certainly collection activity, rendering Plaintiff's interpretation of the statement inconsistent and illogical.

**D. The interpretation advanced by ERC is consistent with the text of the FDCPA.**

Finally, Plaintiff's interpretation, that to stop collection activity means to prevent it from ever occurring is inconsistent with and unreasonable in light of the text of the FDCPA itself. Plaintiff does not allege a claim under section 1692g, but its text is relevant to her claimed interpretation.

Section 1692g(a) enumerates five pieces of information the collector is required to provide to the consumer at the outset of collection, including that if a written request for validation is sent within thirty days, the collector will stop collection until it provides the requested information. Section 1692g(b) creates substantive obligations on the part of the collector regarding receipt of written disputes. It states, in relevant part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt*, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.

15 U.S.C.A. § 1692g(b) (2015) (emphasis supplied). The above language makes clear that, although a collector is entitled to continue with collection activity during the thirty-day period, to comply with this provision, a collector must pause its collection activity upon receipt of a timely written dispute. In drafting this provision, Congress used the term "cease," a synonym of the word *stop*, to instruct that *further* collection activity would be required to be halted after receipt of a timely written dispute. The statement on which Plaintiff's claim is based may only *reasonably* be interpreted in the same manner. Specifically, the only reasonable interpretation of the statement is that, although collection efforts have already begun, upon making the requested payment(s), the collection efforts will cease.

This understanding is further supported by the FTC's interpretation of the provision. *See* Letter from John F. LeFevre, Attorney, Federal Trade Commission, Office of the Secretary, to Robert G. Cass, Compliance Counsel, Commercial Financial Services 1997 WL 33791232, at *1

(December 23, 1997) [hereinafter Cass Letter]. In the Cass Letter, the FTC responded to several questions posed regarding the requirements of section 1692g. First, the Cass Letter stated that a collector is permitted to engage in credit reporting during the thirty-day period. *Id*. It then clarified that a collector ceases collection activity, as required by section 1692g, when it accurately updates previously reported credit information after receipt of a timely written dispute. *Id.*

Plaintiff's interpretation is inconsistent with the plain language of the FDCPA as well as how it has been interpreted by the FTC. At all times relevant hereto, ERC was entitled to engage in collection activity and to accurately report on Plaintiff's credit report. The statements in the Letter did not relinquish this right; it merely informed Plaintiff that she could realize a savings of approximately twenty-percent of the amount that she owed to Sprint but, while collection on the debt would cease after such payment, she would not be eligible to reinstate her service with Sprint. Consistent with the FTC interpretation of the analogous provision 1692g, ERC still would be considered to have ceased, or stopped, collection activity if it accurately updated previously reported credit information on the account. Thus there was nothing inconsistent with the Letter's language and the conduct Plaintiff alleges.

Plaintiff's purported interpretation of the allegedly deceptive language ignores the clear context in which it appears, a Letter seeking to collect on the account. Thus, the claimed interpretation that collection activity had not yet begun, and could be prevented *in toto* by paying the amount sought, is unreasonable as a matter of law as even the least sophisticated consumer must realize that the Letter is itself collection activity.

At no point in the Letter does ERC state that it will forgo collection activity until the date for taking advantage of the twenty-percent savings passed.  ERC was therefore not estopped from

reporting Plaintiff's delinquent account to the credit bureaus, just as it was not estopped from sending additional letters or placing telephone calls to Plaintiff during that time. The complaint must be dismissed, with prejudice, because Plaintiff's claims are not supported by the clear and plain language used in the Letter attached to the Complaint.

### III. The Letter contains truisms, which are not misleading or deceptive under the FDCPA as a matter of law.

Additionally, the Complaint is due to be dismissed because the statement under which Plaintiff claims confusion or deception or both, is merely a truism and cannot serve as the basis of a claim under section 1692e.

The statement of a truism in a collection letter is not false or misleading under the FDCPA. *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 575 (7th Cir. 2004). In *Taylor*, the consumer claimed the statement "your account balance may be periodically increased due to the addition of accrued interest or other charges as provided in your agreement with your creditor" was confusing. *Id.* at 575. The court found this statement was not confusing as a matter of law, and it was nothing more than a truism. *Id.* To be sure, the accrual of interest would cause periodic increases in the amount of the debt. Likewise, the court rejected the consumer's argument that the statement "act now to satisfy this debt" violated the FDCPA by overshadowing the consumer's ability to dispute the debt within thirty days of the letter. *Id.* at 576. The court held this statement could not violate the FDCPA because it was puffery and it would be "perfectly obvious to even the dimmest debtor that the debt collector would *very* much like him to pay the amount demanded straight off, sparing the debt collector any further expense. *Id.* at 575-76 (emphasis in original).

The Northern District of Illinois applied this rule of law in *Hernandez v. Attention, LLC*, 429 F. Supp.2d 912, 916 (N.D. Ill. 2005). In *Hernandez*, the consumer claimed the statement "[y]our failure to remit the balance due will result in our agency continuing our collection efforts" was

14

misleading and would cause the unsophisticated consumer to think collection efforts would continue even if the consumer timely disputed the debt under section 1692g. *Id.* at 915. The court found the statement that a debt collector would continue to seek collection of a debt if it was not paid was merely an unactionable truism. *Id.* at 915. It reasoned the validation notice was clearly displayed and "there is no reasonable implication that the debt collector's simple statement that it intends to do its job conflicts with a debtor's right to verification of the debt." *Id.*

Here, the Letter's language of which Plaintiff complains is merely a truism. Both the statement that a delinquent account is permitted to be reported to the credit bureaus, and that acceptance and payment of a settlement would stop collection activity, are mere statements of what should be obvious to even the unsophisticated consumer. In fact, the statement that payment of the account would cease collection activity is the logical converse of the truism at issue in *Hernandez*. Just as a consumer would already know failure to pay would lead to continued collection activity, so would a consumer understand that payment of the debt would end such collection activity.

Moreover, the statement regarding credit reporting is similarly a truism as evidenced by the fact that it is merely the recitation of a safe harbor disclosure provided in federal regulations implementing the Fair Credit Reporting Act. And even if a consumer would not know the substance of the disclosure, that delinquent accounts can be reported to the credit bureaus, then using the safe harbor disclosure language serves the purpose of the statute, providing consumers with notice that his or her credit report could reflect negative activity. As discussed above, providing additional information to the consumer is not actionable under the FDCPA.

15

Thus, Plaintiff's Complaint must be dismissed in whole because the statements of which Plaintiff complains are truisms and utilize safe harbor language under the Fair Credit Reporting Act and therefore, cannot form the basis for a FDCPA claim.

**IV.      Any alleged falsity or misrepresentation is immaterial and, thus, not actionable under the FDCPA.**

Finally, even if the statements were in some sense technically misleading or confusing, any such confusion would be immaterial and, therefore, cannot support her FDCPA claims. In order to violate section 1692e, or its subsections, the statement complained of must be material. *Wahl*, 556 F.3d at 646; *Hahn*, 557 F.3d at 757.

In *Hahn*, the consumer claimed that the representation in a letter of "interest due" and the amount of $82.64 was a false representation regarding the character and amount of her debt because, she alleged, in actuality more of the total amount was actually interest. *Hahn*, 557 F.3d at 756. The consumer claimed that interest accrued on the account while the original creditor had it and the collector's representation of interest reflected only interest accrued since the account was placed with the collector. By only representing a portion of the interest due as interest, the consumer argued, the collector violated section 1692e generally and specifically section 1692e(2)(A).

The Seventh Circuit rejected her argument, holding any alleged misrepresentation was immaterial and, thus, not actionable under the FDCPA. *Id.* at 757. It reasoned the collector could have complied with the requirements of the FDCPA merely by stating a total amount due without saying from where the amount came. "By providing some extra detail," the court reasoned, the collector "may have helped customers understand the situation." The court elaborated:

> The "amount due" reflected the last balance they would have seen in mailings from HSBC. Lumping together the interest charged while HSBC owned the account, plus interest after the sale to Triumph, would have produced "amount" and "interest" items that did not correspond to any figures that Hahn or other customers would have recognized. Reporting the post-transfer interest separately also could have helped debtors to check whether Triumph had applied the correct interest rate to the balances acquired from HSBC. Classifying obligations in a way that helps customers to understand what has happened cannot be condemned as a false statement about a debt's character.

*Id.* It continued:

> Materiality is an ordinary element of any federal claim based on a false or misleading statement.
>
> We do not see any reason why materiality should not equally be required in an action based on § 1692e. The statute is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect. This is the upshot of our conclusion in Wahl, that, "[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act] — even if it is false in some technical sense." A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.

*Id.* at 757-58 (internal citations omitted).

In *Wahl*, the collector likewise had designated a "principal balance" that included interest and other fees that accrued on the account before it was placed for collection. The consumer claimed that including these amounts as a principal balance violated sections 1692e, 1692e(2)(A) and 1692e(10). The Seventh Circuit rejected these claims finding her arguments for liability "hypertechnical at best," "flawed from beginning to end[,]" and "rest[ing] on empty semantics[.]" *Wahl*, 556 F.3d at 645, 647. The court found that even the unsophisticated consumer, "with a reasonable knowledge of her account's history" would not be misled by the characterization of the amount as principal. *Id.* at 646. Thus, even if the representation was false in a technical sense, it did not violate the FDCPA.

Likewise, Plaintiff's theory of liability against ERC is at best hypertechnical. In citing to *Rivera* out of the District of Puerto Rico to claim that reporting a delinquent account to a credit bureau is collection activity prohibited by ERC's Letter, Plaintiff rests on mere semantics. *Rivera* does not involve a substantive FDCPA claim, but rather personal jurisdiction of the defendant for a Fair Credit Reporting Act claim. *See Rivera v. Bank One*, 145 F.R.D. 614, 622-25 (D.P.R. 1993). To be sure, it does not speak to what is collection activity under the FDCPA, nor how the unsophisticated consumer would read the statements in ERC's Letter.

As the Seventh Circuit noted in *Hahn*, the FDCPA is "designed to provide information that helps consumers to choose intelligently." *Hahn*, 557 F.3d at 757. If a Letter's content does not frustrate that purpose, then any alleged misstatement is not material and does not violate the statute. The information provided in ERC's Letter merely informs the consumer that she has the opportunity to pay less than the full amount owed for a limited time, which offer is not obligated to be renewed, and the ramifications of accepting that offer. This information only helps the consumer to choose intelligently based on the benefits he or she wishes to obtain in exchange for payment of the account and, thus, is consistent with and advances the aims of the FDCPA.

Furthermore, the separate disclosure regarding credit reporting should not have any bearing on a consumer's choice. As discussed in Part II.B above, the statement "[t]his letter serves as notification that your delinquent account may be reported to the national credit bureaus," mirrors the safe harbor language promulgated by the Federal Reserve Board under the Fair Credit Reporting Act for furnishers of credit information to comply with its provisions. As such, it merely presents the information which Congress has decided helps the consumer to know about potential activity on his or her credit report. As recognized by the Seventh Circuit in *Hahn,* this presentation of additional, helpful information helps the consumer. *Id.* at 757 ("Classifying

obligations in a way that helps customers to understand what has happened cannot be condemned as a false statement about a debt's character."). Furthermore, as the Letter makes clear that the account is already delinquent, a statement that it is permitted to be reported does not frustrate a consumer's decision-making ability and is thus immaterial.

## V.     Conclusion

All of Plaintiff's claims of misrepresentation, deception, and confusion stem from three statements of ERC's Letter. Though Plaintiff claims to be confused regarding these statements, two of them are explicitly promulgated as safe harbor disclosures to ensure a lack of consumer confusion in complying with the FDCPA and the Fair Credit Reporting Act. The third statement, that payment of the amount offered would end collection activity, is nothing more than the statement of a truism when read in isolation and is a statement to ensure a lack of consumer confusion regarding the benefits that could be obtained by accepting ERC's settlement offer, when read in the larger context of the paragraph in which it appears, and the Letter itself.

Plaintiff alleges that prior to the deadline for receiving a 20% discount on the amount owed to Sprint contained in the Letter, ERC recorded Plaintiff's delinquent account to one or more consumer reporting agencies. This allegation, however, is irrelevant to Plaintiff's claims, as there is no representation contained in the Letter that ERC would not engage in credit reporting the account. In fact, the Letter says just the opposite, that the delinquent account is permitted to be reported to the consumer reporting agencies. The only statement with regard to the date contained in the Letter is that the consumer can realize a savings of twenty-percent by taking advantage of the offer before May 26.

Plaintiff failed to allege that any statement in the Letter was false with regard to the amount, character, or legal status of the account. Thus she has failed to state a claim under Section

1692e(2)(A). Additionally, the statements contained in the Letter are wholly true and accurate and as discussed above, did not form the basis for a claim under section 1692e or subsection 1692e (10). Accordingly, all of the Plaintiff's claims regarding the Letter must be dismissed, and should be dismissed with prejudice.

DATED: October 18, 2016

By: */s/ Patrick B. Healy*
Patrick B. Healy
*Attorney for Defendant*
*Enhanced Recovery Company*

LEWIS BRISBOIS BISGAARD & SMITH LLP
909 Wright's Summit Pkwy., Ste. 230
Ft. Wright, KY 41011
Telephone:    859-663-9830
Facsimile:    859-663-9829
Email: Patrick.Healy@lewisbrisbois.com

*Counsel for Defendant*
*Enhanced Recovery Company, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2016 a copy of the foregoing has been sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Patrick B. Healy*
Patrick B. Healy

LEWIS BRISBOIS BISGAARD & SMITH LLP
909 Wright's Summit Pkwy., Ste. 230
Ft. Wright, KY 41011
Telephone:    859-663-9830
Facsimile:    859-663-9829
Email: Patrick.Healy@lewisbrisbois.com

*Counsel for Defendant*
*Enhanced Recovery Company, LLC*