UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ERIN JOHNSON,<br>on behalf of plaintiff and a class,<br><br>Plaintiff,<br><br>v.<br><br>ENHANCED RECOVERY COMPANY, LLC,<br><br>Defendant. | 2:16-cv-00330-PPS-APR |

### OPINION AND ORDER

Erin Johnson claims that the dunning letter she received from Enhanced Recovery Company, LLC ("ERC"), a debt collector, was false or misleading in violation of the Fair Debt Collection Practices Act. ERC seeks dismissal of the case, arguing that the letter is plainly neither false nor misleading. The Seventh Circuit has instructed that whether a debt collection letter is misleading under the FDCPA turns on questions of fact. Dismissal is permitted in only the most extreme cases, when no reasonable consumer could be misled. Johnson's complaint plausibly shows that ERC's letter could mislead reasonable consumers. So ERC's motion to dismiss will be denied.

### Background

ERC sent Johnson a collection letter dated April 21, 2016. The letter alleges that Johnson didn't pay her Sprint bill, so Sprint contracted with ERC to collect the debt. The letter offers Johnson three options to pay less than the full amount allegedly due. The

second page of the letter appears to contain notices required by federal and various states' laws. (DE 1-1 at 1-2.) Johnson attached the letter to her complaint. (DE 1-1, referred to in the complaint as "Exhibit A.") It is therefore "part of the [complaint] for all purposes." Fed. R. Civ. P. 10(c). Rather than just looking to the plaintiff's description of the letter, I will go straight to the horse's mouth and refer directly to the letter. *See, e.g.*, *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

Johnson filed her complaint on July 12, 2016, alleging that the April 21 letter violated the FDCPA by making false or misleading statements. (DE 1, hereinafter cited as "Compl.") Johnson seeks class certification of her suit. (DE 4.) The Magistrate Judge temporarily stayed class certification briefing. (DE 8, 14, 20.) I subsequently denied the motion without prejudice to refiling because it was getting stale without briefing. (DE 26.) So for the present, the party plaintiff in this case is Johnson as an individual.

ERC's letter to Johnson says, in relevant part:

> Our records indicate that your balance with Sprint remains unpaid; therefore your account has been placed with ERC for collection efforts. We are willing to reduce your outstanding balance by offering discounted options.
>
> Option 1: Pay the settlement of $875.78, please remit by May 26, 2016.
> Option 2: Pay the settlement of $930.51, payable in 2 monthly payments of $465.26.
> Option 3: Pay the settlement of $985.25, payable in 3 monthly payments of $328.42.
>
> We are not obligated to renew this offer.
>
> **This letter serves as notification that your delinquent account may be reported to the national credit bureaus.**

2

>Payment of the offered settlement amount will stop collection activity on this matter. We will inform Sprint once the payment(s) is/are posted. Payment of the settlement amount will not restore your service with Sprint. If you wish to establish service with Sprint at a future date, the remaining balance must be paid in full prior to the consideration of any future services being granted.

(DE 1-1 at 1, **emphasis** added.) Johnson's claim arises out of the bolded text, both standing on its own and based on its relation to the surrounding text offering a chance to settle.

Although the letter from ERC states that Johnson's delinquent account "may" be reported to credit bureaus, in fact ERC already had reported the delinquent debt to national credit bureaus in April 2016, around the time it mailed the letter to Johnson. (Compl. ¶ 23.)

## Discussion

ERC seeks dismissal of the case with prejudice under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss for failure to state a claim doesn't address the underlying merits of a case, but rather the sufficiency of the pleadings. I will accept as true all of the allegations in the complaint, which must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 601 (7th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). The appearance of a right to relief must be more than speculative; it must be plausible. The complaint also serves as notice of the claims and their grounds, so it must provide enough detail to

3

give the defendant fair notice. *Bravo*, 812 F.3d at 601-02 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)).

The primary purpose of the FDCPA, 15 U.S.C. §§ 1692–1692p, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Johnson's claim arises under 15 U.S.C. § 1692e, which prohibits false or misleading representations in connection with debt collection. Johnson specifically cites 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10), which state:

> § 1692e. False or misleading representations
> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of—
>     (A) the character, amount, or legal status of any debt; . . .
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Section 1692e's sixteen subsections are representative examples of impermissible conduct, but § 1692e is expressly not limited to these. *See, e.g., Lox v. CDA, Ltd.*, 689 F.3d 818, 822, 827 (7th Cir. 2012); *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011).

Under 15 U.S.C. § 1692k(a), any debt collector who fails to comply with any provision of 15 U.S.C. §§ 1692 *et seq.* with respect to a person may be civilly liable to that

person. A § 1692e plaintiff need not prove that she was misled to her detriment and that she suffered actual damages. *See Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 629 (7th Cir. 2009). Statutory damages are available under 15 U.S.C. § 1692k(a)(2).

FDCPA allegations, including claims brought under § 1692e, are assessed from the perspective of the Seventh Circuit's objective "unsophisticated consumer," created in *Gammon v. GC Services Limited Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994), as a mutation of the widely adopted "least sophisticated consumer." *See, e.g.*, *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993). This consumer is taken to be "uninformed, naive, or trusting," but nonetheless has a rudimentary understanding of personal finances and is essentially reasonable. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (quoting *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 564-66 (7th Cir. 2004)). The reasonableness requirement "shields complying debt collectors from liability for unrealistic or peculiar interpretations of collection letters." *Gammon*, 27 F.3d at 1257. A plaintiff's idiosyncratic reading won't carry the day even if that reading is sincere: "a collection letter cannot be confusing as a matter of law or fact 'unless a significant fraction of the population would be similarly misled.'" *Durkin*, 406 F.3d at 415 (quoting *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000)).

The Seventh Circuit has warned district court judges against assuming that the interpretation a plaintiff propounds is an outlier just because it differs from a judge's own interpretation. A judge may not impute his own well-developed reading

5

comprehension skills to the recipients of debt collection notices. What may seem obvious and beyond contestation to a federal judge may be clear as mud to many consumers. In order to understand how other people interpret a letter, a judge may need to review evidence derived from other people. It is for this reason that whether a collection letter is misleading is a question of fact. *See, e.g.*, *McMillan v. Collection Prof'l's Inc.*, 455 F.3d 754, 759-60 (7th Cir. 2006) (reversing 12(b)(6) dismissal of a § 1692e claim because "the inquiry under §[ ] 1692e . . . requires a fact-bound determination of how an unsophisticated consumer would perceive the letter"); *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999) ("The conclusion that [a plaintiff's] complaint states a claim on which relief may be granted and therefore may not be dismissed under Rule 12(b)(6) follows directly from the proposition that 'confusion' is a matter of fact rather than law."); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999).

It is also true that sometimes there are outlier cases. It is for this reason that, when it comes to allegations of misleading statements in collection notices, the Seventh Circuit differentiates extreme cases from closer ones that require additional evidence by grouping cases into three categories: (1) cases in which the statements would not mislead any reasonable consumer, even an unsophisticated one, and the court grants dismissal or summary judgment for the defendant as a matter of law, *see, e.g.*, *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 841 (7th Cir. 2007); (2) cases in which the statements are not plainly misleading but might mislead the unsophisticated consumer, in which situation plaintiffs may prevail only by producing evidence to prove that a

6

substantial portion of consumers would find the statements misleading, *see, e.g.*, *Muha*, 558 F.3d at 629-30; or (3) cases in which the statements are plainly deceptive, and the court will grant summary judgment for the plaintiff, *see, e.g.*, *Lox*, 689 F.3d at 826-27. *See also Ruth v. Triumph P'ships*, 577 F.3d 790, 800-01 (7th Cir. 2009) (discussing the three categories of cases alleging misleading statements under the FDCPA).

The categories don't explicitly account for materiality—the additional requirement that a successful plaintiff must demonstrate that a false statement actually matters. Technical falsity is not enough to constitute a violation; the false statement must have the capability to affect the unsophisticated consumer's decisionmaking. The FDCPA exists to protect consumers, and an immaterial statement by definition can't do them any harm because it has no effect at all. *See, e.g.*, *Lox*, 689 F.3d at 824, 827; *Muha*, 558 F.3d at 627-28; *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009).

But by the same token, literal truth may not protect a debt collector from liability if the statements at issue convey a misleading impression. *McMillan*, 455 F.3d at 761. Rather than looking at each sentence in isolation as strictly true or false, the Seventh Circuit has taken a more holistic and nuanced approach to § 1692e claims. The bottom line question is whether a collection letter would mislead a substantial number of recipients. *See Ruth*, 577 F.3d at 800-01, 801 n.4 (collecting cases). Courts have looked at factors including the statement's placement within the letter, its relation to other information in the letter, and word choice. *See, e.g.*, *Muha*, 558 F.3d at 629-30 (reversing grant of summary judgment for defendant on § 1692e claim because district court

7

focused on survey evidence and literal falsity without addressing "the critical issue, which is that of confusion" caused by letter's statement that consumer's "original agreement with the above mentioned creditor has been revoked"); *McMillan*, 455 F.3d at 761-62 (reversing grant of 12(b)(6) motion with respect to letter's statement that called "into question a debtor's honesty and good intentions simply because a check was dishonored").

I'll now turn to the collection letter at issue in this case. Let me begin by pointing out that, in many respects, the parties frustratingly seem to be ships passing in the night as they miss one another's point and argue issues that are irrelevant or uncontested. Of course they don't see eye to eye—hence the lawsuit—but they don't do themselves any favors by tilting at strawmen rather than focusing on the real issues. I'll point out some of these missed connections where they're relevant in an effort to focus the case moving forward.

At this stage, all I must decide is whether this is a category 1 case described above. In other words, is this a case in which the statements are patently not misleading and would not mislead any reasonable consumer, even an unsophisticated one? If it is such a case, as ERC argues, then it needs to be brought to an abrupt halt. The first step in determining a statement's truth or falsity is determining what the statement means. Johnson's first theory of recovery is that the credit reporting warning is false and violates the FDCPA standing on its own. Johnson claims that telling her the delinquent account "may be reported" to a credit bureau was demonstrably false since the account

8

had in fact already been so reported. (Compl. ¶¶ 20-23; DE 22 at 2.) This argument interprets "may" as an indication of an unrealized possibility. ERC counters that the word "may" means that it is *permitted* to report the delinquency.

The word "may" is certainly used in both of those ways. Merriam-Webster puts it like this: "(1) (a) archaic: have the ability to[;] (b): have permission to . . . —used nearly interchangeably with *can*[;] (c) —used to indicate possibility or probability . . . ." *May*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/may (last visited Jan. 15, 2017). ERC attempts to merge the definitions. It argues that there is actually no difference between the two because ERC is permitted to report the delinquency at any time, that might happen, and the letter simply forewarns Johnson that the delinquency could show up in her credit history. (DE 18 at 6-7.)

ERC points out that the Fair Credit Reporting Act ("FCRA") requires some creditors to provide notice that negative information may be reported to credit bureaus, and argues that it cannot be penalized for providing the warning because it used safe-harbor model language to do so. (DE 18 at 6.) This part of ERC's argument leads the parties into a dispute (Johnson even filed a surreply to address it) about whether ERC was *required* to provide the credit reporting warning, as it is not a "creditor" under the FDCPA. *See* 15 U.S.C. § 1692a(4). (DE 22 at 7-8; DE 23 at 13-14; DE 24 at 1-2.) It looks like ERC is peddling a red herring here—it never actually affirmatively asserts that it was required to provide the credit reporting warning, and in fact indicates that it probably wasn't. But even if the FCRA did require ERC to provide a credit reporting warning,

ERC would not be immunized against FDCPA claims about the manner in which it did so. Judicial opinions analyzing claims brought under 15 U.S.C. § 1692g, an FDCPA provision requiring certain notices to consumers, demonstrate that a party can violate the FDCPA even in providing mandatory disclosures. This can happen when a debt collector provides the mandatory disclosures in a confusing way or includes language that undermines or muddles their meaning. *See, e.g.*, *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 321 (7th Cir. 2016) (collecting cases). ERC's intent in including the credit reporting warning is irrelevant at this point. The FDCPA imposes strict liability upon debt collectors who fail to meet its requirements. *See Ruth v. Triumph P'ships*, 577 F.3d 790, 805-06 (7th Cir. 2009); *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003). Of course, ERC can seek to prove that it intended to provide fair notice to consumers about credit reporting, and that its intent was effectuated such that the statement somehow actually aids consumers' understanding rather than hindering it. *See, e.g.*, *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 630 (7th Cir. 2009); *Turner*, 330 F.3d at 995.

For now, it is enough to say that Johnson's proposed interpretation of the credit reporting warning standing alone is plausible, and therefore passes muster under Rule 12(b)(6). As the case proceeds, the parties may (both might, and are permitted to) present evidence about how unsophisticated consumers would interpret it.

Johnson's second theory of recovery is based on the credit reporting warning's placement in the middle of the settlement offer. According to ERC, the credit reporting

10

warning is separate from the settlement offer statements, and each statement in the letter is independently true. (DE 18 at 5-6, 14-16.) ERC conclusorily states that the letter does not offer any way to avoid having the delinquency reported. (DE 18 at 7.) ERC never actually addresses the letter's organization, specifically the curious placement of the credit reporting notice. Johnson claims that unsophisticated consumers would interpret the credit reporting warning, combined with the next sentence (in a new paragraph, among a series of very short paragraphs), as offering not to report the delinquent account. The next sentence is this: "Payment of the offered settlement amount will stop collection activity on this matter." (DE 1-1 at 1.)

      The parties debate whether "collection activity" includes credit reporting—the problem with this dispute is that they appear to agree that it does. (DE 22 at 10-11; DE 23 at 2). ERC argues that telling Johnson that payment will stop collection activity can't be a promise that collection activity as a whole will be prevented from ever happening because the letter itself is collection activity. (DE 18 at 10-13.) But the fact that collection activity has started (evidenced by ERC mailing the collection letter) doesn't mean that it can't be stopped before the delinquency is reported to the credit agencies. A course of action can be stopped from ever starting (ERC's interpretation of Johnson's claim (DE 18 at 10-13; DE 23 at 2-4)), but it can also be stopped once it starts and before some particular event included in the course of action occurs (Johnson's claim (DE 22 at 11-12)). This discussion also begs the question why credit reporting was singled out among

11

all of the possible collection activities for specific mention in the middle of the settlement offer. ERC never answers that question.

Apparently in response to ERC's arguments, Johnson goes off on a tangent about 'pay-for-delete' agreements, attaching 158 pages of 26 exhibits of Internet search engine results for the phrase "pay for delete." [1] (DE 22 at 8-9; DE 22-1.) Discussion of pay-for-delete may be relevant, but I don't see how. First, why would a recipient of ERC's letter search for the phrase "pay for delete"? It's not mentioned in the letter and I don't think it's a universally known term. Second, Johnson's claim is that ERC offered not to report the delinquency in the first place, which is different from offering to delete the delinquency once it has already been reported. The quid pro quo Johnson alleges is different from the very specific phenomenon of pay-for-delete described ad nauseam in DE 22-1. Third, anyone who actually reads the Web pages in DE 22-1 knows that a pay-for-delete agreement is unusual, difficult for a consumer to obtain, and disfavored because it violates debt collectors' contracts with credit bureaus, so it's a risky move for a debt collector. (*See, e.g.*, DE 22-1 at 71-72.) Given those facts, even if a debt collector might occasionally agree to a pay-for-delete deal, it wouldn't offer pay-for-delete en masse, providing voluminous evidence of its willingness to breach its contracts with the credit bureaus. Johnson's evidence would support an argument that ERC's letter didn't

---

[1] It is proper to consider these attachments as attempted illustrations of the facts Johnson expects to be able to prove. *See Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015) (citing *Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015) ("[N]othing prevents a plaintiff opposing dismissal from elaborating on the complaint or even attaching materials to an opposition brief illustrating the facts the plaintiff expects to be able to prove.")).

offer pay-for-delete. But that has no bearing on whether ERC's letter would be interpreted by a significant number of consumers as offering not to report the delinquency in the first place in exchange for the consumer paying to settle.

The legitimacy of the quid pro quo that Johnson alleges the letter offers is at the heart of her claim. She asserts that ERC's letter makes an offer to induce her to settle, but that ERC was never going to keep up its end of the deal by not reporting the delinquency. It appears uncontested that ERC never intended to adhere to such an agreement. ERC argues it never even intended to make the offer, although its intent in that respect is irrelevant because what matters is the letter's effect on the unsophisticated consumer recipient. The ultimate question, then, is whether a significant number of consumers would interpret the letter as making the non-reporting offer. Johnson's theory is plausible, and I can't say at this point whether a substantial number of consumers would view the letter as she suggests. Dismissal is therefore inappropriate.

**The allegedly misleading statements were material**

ERC also argues that even if a statement in its letter was technically false, that statement was not material. ERC argues that any falsity is only based on a "hypertechnical" reading. ERC further argues that its letter just provides Johnson with fair warning that she may have a negative mark on her credit report, so it doesn't frustrate the purpose of the FDCPA. Finally, ERC argues that the warning about possible reporting of the already-delinquent account has nothing to do with the

13

settlement offers, so it cannot be material to Johnson's decision with respect to the settlement offers. (DE 18 at 16-19.)

Credit reports matter, and damage to one's report can occur in a moment but take a decade or more to repair. Johnson's claim is that a consumer would think ERC's letter was an offer to let her avoid a black mark on her credit by paying a reduced debt amount, which may be in reach while the original debt wasn't. If Johnson is correct about how the unsophisticated consumer would interpret ERC's letter, the statements are certainly material. Consumers with debts in collection are generally people doing their best in the face of a tough situation that requires them to make difficult choices. "[T]here is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule. The vast majority of consumers who obtain credit fully intend to repay their debts." *McMillan v. Collection Prof'l's Inc.*, 455 F.3d 754, 762 (7th Cir. 2006) (ellipsis, brackets omitted) (quoting S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697). By offering (or appearing to offer) a consumer a way to keep one delinquency off her credit report, a debt collector might get itself bumped to the top of her list of payments to make. That makes the offer material, assuming Johnson proves there was an offer. If she proves something different or less than that, then the issue of materiality may need to be revisited.

**Conclusion**

For the foregoing reasons, Defendant ERC's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is **DENIED**. (DE 17.)

**SO ORDERED**.

ENTERED: January 17, 2017

/s/ Philip P. Simon
**PHILIP P. SIMON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**