# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| ERIN JOHNSON, on behalf of plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:16CV330-PPS |
| ENHANCED RECOVERY COMPANY, LLC, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Erin Johnson has brought this case alleging that debt collector Enhanced Recovery Company sent her a dunning letter that was false or misleading in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692e. The form letter challenged by Johnson has been described and discussed at length in my previous order denying ERC's motion to dismiss. [DE 27.] Now before me is Johnson's renewed motion to certify a class of plaintiffs under Fed.R.Civ.P. 23(a) and (b)(3). Rule 23(a) prescribes requirements of numerosity, commonality, typicality and a representative that will fairly and adequately protect the interests of the class. Rule 23(b)(3) authorizes the type of class action in which "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that is "superior to other available methods for fairly and efficiently adjudicating the controversy."

Johnson proposes herself and her attorneys as class representative and class counsel. She proposes this definition for the class:

> (a) all individuals in Indiana (b) who were sent a letter by defendant
> (c) offering a settlement (d) and stating that "your delinquent account may
> be reported to the national credit bureaus" (e) where the debt was
> reported to one or more national credit bureaus (Equifax, Trans Union, or
> Experian) on or before the date in the letter for receipt of the settlement, or
> first payment thereof (f) and the letter was sent at any time during a
> period beginning July 13, 2016 and ending August 3, 2017.

[DE 53 at 2.] The numerosity requirement of Rule 23(a)(1) appears to be easily satisfied.

Johnson represents, without contradiction by ERC, that in discovery ERC has

preliminarily identified 39,196 individuals meeting Johnson's proposed class definition.

Johnson contends that there are questions of law and fact common to the class as

required by Rule 23(a)(2), and that those common questions predominate over

questions affecting only individual members, as required for a class under Rule 23(b)(3).

Johnson's class definition specifies the members' receipt of a particular type of "notice

of debt" that (1) offered to settle a debt, (2) included particular language warning that

"your delinquent account may be reported to the national credit bureaus," (3) was sent

within a specified period of time, and (4) provided a date for receipt of settlement

payment *after* the debt was reported to a credit bureau. [DE 53 at 2.] The class

definition therefore prescribes a high level of factual commonality among the members

of the class. There exists a "common nucleus of operative fact" for all class members

because ERC "engaged in standardized conduct towards members of the proposed

class by mailing to them allegedly illegal form letters." *Keele v. Wexler*, 149 F.3d 589, 594

(7th Cir. 1998). The predominant legal question posed by the case is common to all

members of the class, namely whether this notice violated the FDCPA by

misrepresenting that no report would be made to a national credit bureau if the recipient timely availed herself of one of the settlement options offered.

ERC challenges the commonality requirement, with reliance on the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). *Dukes* presented Wal-Mart's appeal of the certification of a class of 1.5 million plaintiffs, female employees who alleged sex discrimination in pay and promotion in violation of Title VII. *Id*. at 342. In an effort to satisfy the commonality requirement of Rule 23, the class framed the theory of their case in a particular way, as described by Justice Scalia: "that a strong and uniform 'corporate culture' permits bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart's thousands of managers – thereby making every woman at the company the victim of one common discriminatory practice." *Id*. at 345.

As *Dukes* notes, the commonality requirement is "easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."'" *Id*. at 349, quoting Nagareda, Class Certification in the Age of Aggregate Proof, *84* N.Y.U.L.Rev. 97, 131-132 (2009). More particularly, commonality for purposes of Rule 23 requires that the class members have "'suffered the same injury.'" *Dukes*, 564 U.S. at 350, quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982). Further, the class members' claims must "depend upon a common contention...of such a nature that it is capable of classwide resolution – which means that determination of it is truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

The Supreme Court concluded that *Dukes* could not proceed as a class action because the plaintiffs lacked the requisite "significant proof" that Wal-Mart operated under a general policy of discrimination, and instead only offered evidence to the contrary, namely of a policy of "*allowing discretion* by local supervisors over employment matters." *Id*. at 353, 355. Nothing in *Dukes* persuades me that the class in this case lacks commonality. The question of FDCPA compliance posed here by the same form letter sent to 39,000 debtors is clearly not analogous to the "literally millions of employment decisions at once" involved in *Dukes*, 564 U.S. at 352, in which the challenged decisions were all discretionary and distinctly made.

ERC contends that Johnson's stated intention not to rely on extrinsic evidence (an expert witness or consumer survey evidence) in support of her claims suggests that the case is not capable of presentation on a classwide basis. [DE 54 at 6.] The adequacy of Johnson's evidence to ultimately support the merits of the FDCCPA claim is an issue separate from considerations of class certification. Although it may be an issue for summary judgment, the sufficiency of Johnson's evidentiary support does not enter into the determination of the appropriateness of class certification.

ERC also argues that the FDCPA claim here depends on a material misrepresentation, and that "[w]hether any statements resulted in a material misstatement that actually affected the recipient's decision-making is an issue that

cannot be proved on a classwide basis." [DE 54 at 4.] But claims under §1692e use an objective "unsophisticated consumer" standard, under which "it is unimportant whether the individual that actually received a violative letter was misled or deceived." *Lox v. CDA, Ltd.*, 689 F.3d 818, 826 (7th Cir. 2012). "[O]ur test for determining whether a debt collector violated §1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. JV.D.B. & Assoc.*, 300 F.3d 991, 995 (7th Cir. 2003).

This objective analysis applies to the issue of materiality as well as to the deceptive character of the communication. *Lox*, 689 F.3d at 826 (materiality means the ability to influence a consumer's decision); *Afewerki v. Anaya Law Group*, 868 F.3d 771, 776 (9th Cir. 2017); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3rd Cir. 2015); *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015); *Mikolajczyk v Universal Fidelity, LP*, Case No. 16-CV-1382, 2017 WL 706301 at *4 (E.D.Wisc. Feb. 22, 2017); *Bowse v. Portfolio Recovery Associates, LLC*, 218 F.Supp.3d 745, 753 (N.D.Ill. 2016). The question will be not whether any particular plaintiff's decision-making was influenced by the challenged text of the notice, but whether "a significant fraction of the population would be." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000). Further, as Johnson points out, I have already held, in ruling on ERC's motion to dismiss, that "[i]f Johnson is correct about how the unsophisticated consumer would interpret ERC's letter, the statements are certainly material." [DE 17 at 14.]

ERC also raises issues of standing, which of course is constitutionally necessary for the maintenance of any action. The minimum requirements of standing to pursue a claim are that: (1) the plaintiff must have suffered an "injury in fact" (2) that is "fairly traceable to the challenged conduct of the defendant" and (3) that a favorable judicial result is likely to redress. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). ERC argues that class certification is inappropriate because "detailed and individualized inquiry" would be required to determine each class member's injury in fact supporting standing to sue. [DE 54 at 8.] Johnson cites *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009), for the proposition that, "[f]or class certification, only the Plaintiff needs to establish standing." [DE 57 at 7.] In *Kohen*, the Seventh Circuit held that although "injury is a prerequisite to standing[,] as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Id*. at 676.

That returns the focus to Johnson herself, who ERC contends lacks standing because she suffered no injury in fact, citing *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 727-28 (7th Cir. 2016), and *Hahn v. Triumph Partnerships, LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009). In *Meyers*, the Seventh Circuit affirmed the denial of class certification in an action under the Fair and Accurate Credit Transactions Act after finding that the named plaintiff had no injury in fact from the alleged violation of the statute by a credit card receipt that did not truncate the expiration date of his card, but which no one else ever saw. Citing *Spokeo*, the Seventh Circuit held that "[m]ore than a

'bare procedural violation, divorced from any concrete harm' is required to satisfy

Article III's injury-in-fact requirement." *Meyers*, 843 F.3d at 727, citing *Spokeo*, 136 S.Ct.

at 1549.

As for her own injury sufficient to establish standing, Johnson argues that in this

context, materiality and injury are the same analysis. [DE 57 at 8.] Citing *Spokeo*, 136

S.Ct. at 1548, Johnson contends that intangible injury in this case constitutes an injury in

fact. Johnson also cites a number of district court decisions in the Seventh Circuit

holding that consumers who allege misrepresentations or misleading statements in

violation of §1692e have standing to sue. [DE 57 at 10.] *Hernandez v. Midland Credit*

*Management, Inc.*, No. 15-CV-11179, 2017 WL 2985764 (N.D.Ill. July 13, 2017), carefully

considers the question, and concludes that claims under the FDCPA challenging a

dunning letter as false and misleading present an injury in fact. Though intangible, the

injury is both concrete, because it presents an appreciable risk of harm to the plaintiff,

and particularized, because the challenged letter was sent directly to the plaintiff. *Id.* at

*2.

In *Hernandez*, Judge Gottschall notes that a number of FDCPA cases decided by

courts in the Seventh Circuit "uniformly conclude that FDCPA claims satisfy *Spokeo*'s

standing requirements." *Id.*, citing *Dunham v. Robert Crane & Assocs., LLC*, No. 1:16-cv-

2100-SEB-MPB, 2017 WL 2664287, at *4 (S.D.Ind. June 20, 2017), *Pogorzelski v. Patenaude*

*& Felix APC*, No. 16-C-1330, 2017 WL 2539782, at *3 (E.D.Wis. June 12, 2017); *Haddad v.*

*Midland Funding, LLC*, No. 16 C 3942, 2017 WL 1550187, at *3 (N.D.Ill. May 1, 2017).

These cases are persuasive that "[t]he value of receiving truthful information about one's financial affairs – and the ill effects of receiving misleading information – may be hard to quantify, especially where, as here, the plaintiff did not act upon the misinformation," but such a harm is both concrete and particularized, and so is an injury in fact for purposes of standing analysis.

Johnson persuasively argues that the cases ERC relies on involve different facts or statutes and don't support a contrary conclusion here. [DE 57 at 11.] For example, the *Meyers* decision notes that the statute involved there – FACTA, a 2003 amendment to the Fair Credit Reporting Act – was enacted in response to "the increasing threat of identity theft." *Meyers*, 843 F.3d at 725. Because the plaintiff's immediate discovery of the violation meant there was no increased risk of his identity being compromised, and because "Congress has specifically declared that failure to truncate a card's expiration date, without more, does not heighten the risk of identity theft," the Court of Appeals found that the plaintiff lacked standing. *Id*. at 727-728. A different statute addressing a different harm make *Meyers* distinguishable from Johnson's claim under the FDCPA.

ERC also cites *Jackson v. Abendroth & Russell, P.C.*, 207 F.Supp.3d 945, 953 (S.D.Iowa 2016), in which the district court found that the plaintiff lacked standing to bring an FDCPA claim. The claims were that the dunning letter "did not properly inform [plaintiff] of '[his] right to dispute the [d]ebt or to request the name and address of the original creditor'" and demanded payment several days short of the required 30-day validation period. *Id*. at 953. The court found that the plaintiff lacked standing to

bring the claim because he did not intend to challenge the amount of the debt and conceded that the original creditor was correctly identified. *Id.* at 953-54. This "fact pattern" meant the plaintiff's situation did not present "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," which the legislative history showed was the statutory purpose of §1692g of the FDCPA. *Id.* at 954, quoting S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699.

First, I note that it appears the Eleventh Circuit may disagree with the Southern District of Iowa. Describing a similar scenario – a plaintiff complaining of missing FDCPA-required disclosures but not resulting actual damages – the court in *Church v. Accretive Health, Inc.*, 654 Fed.Appx. 990 (11ᵗʰ Cir. 2016), held that the statute had created the right to receive the required disclosures and a new injury of not receiving them, so that the plaintiff had sufficiently alleged she sustained a concrete injury. *Id. at 994-995.*

Here, by contrast, Johnson's claim is brought under §1692e, which prohibits false or misleading representations in the collection of a debt. Johnson alleges that the dunning letter was confusing and misleading because it falsely represented or implied that payment of a proffered settlement would avoid credit reporting when in fact Johnson's debt had already been reported to a credit bureau prior to the deadline for a settlement payment. [DE 1 at 3.] *Jackson* involved omission of required general information about debt dispute options in a dunning letter in which the information presented about the recipient's particular debt was admittedly correct. Here the fact

pattern involves a falsehood in the letter that carried a risk of real harm to the debtor, in that it arguably offered payment of a settlement option *in order to avoid* credit reporting, when in fact the reporting had already taken place. This alleged violation of the FDCPA is distinguishable from *Jackson* and entails a degree of risk sufficient to meet the concreteness requirement. The particularity requirement is unquestionably met by the mailing of the letter to Ms. Johnson, which means its allegedly false, deceptive and misleading content affected her in a personal and individual way. *Spokeo*, 136 S.Ct. at 1548.

A post-*Spokeo* decision of the Second Circuit Court of Appeals supports this injury in fact conclusion on a broad rationale applicable to all claims under §1692e. In *Papetti v. Does 1-25*, 691 Fed.Appx. 24 (2nd Cir. 2017), the Second Circuit considered the *Spokeo* decision, concluded that the statutory purpose of §1692e is clearly to protect "an individual's concrete interests," and concluded that alleged violations of that statute, taken as true, "'entail the concrete injury necessary for standing.'" *Id*. at 26, quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2nd Cir. 2016). Both this broad consideration of §1692e's purposes and the particulars of Johnson's allegations here support my conclusion at this stage that she has standing to bring her claim and to represent a class.

Because standing is a jurisdictional matter lying at the heart of the court's authority to entertain and determine the parties' dispute, it can be raised at any time. ERC has not previously sought dismissal of the action by contesting Johnson's standing to bring the action. Doing so now, ERC cites deposition testimony it contends supports

the conclusion that Johnson suffered no injury in fact. [DE 54 at 13.] At this stage, I make the determination that Johnson has standing predicated solely on her pleading's factual allegations, taken as true, along with the statute and applicable case law. *Berger v. National Collegiate Athletic Association*, 843 F.3d 285, 289 (7th Cir. 2016). If ERC wishes to further challenge standing with reliance on evidence obtained in discovery, it may do so in a motion for summary judgment.

The FDCPA defines "debt" as relating to a transaction "primarily for personal, family, or household purposes." 15 U.S.C. §1692a(5). Relative to the commonality requirement, ERC raises an issue about determining that the obligations underlying its notice to each class member were based on consumer debt, as opposed to commercial debt, which is not subject to the Act. The manner in which Johnson suggests this can be done is unsatisfactory, ERC contends, and would result in a class definition that is both under-representative in one respect and over-inclusive in another. [DE 54 at 16.] Johnson disagrees with this, suggesting that "whether a debt is a business debt is easily determined." [DE 57 at 14.] Johnson also replies that in response to discovery, ERC has not produced evidence that any of the accounts are business debts, calling ERC's argument a "phantom possibility." [DE 57 at 13, 15.]

Johnson cites decisions remarking that because the FDCPA only governs consumer transactions, there could be no class actions under the FDCPA if certification required a demonstration that all transactions in a case were consumer, not business, transactions. [DE 57 at 15.] I share the view of these courts that "the need to show that

11

the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action" and "[i]f that alone precluded certification, there would be no class actions under the FDCPA." *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D.Ill. 2001). *See also Sledge v. Sands*, 182 F.R.D. 255 (N.D.Ill. 1998) ("The burden rests with possible class members to prove they are part of the class; that is, to prove they incurred debts for personal purposes."); *In re CBC Companies, Inc. Collection Letter Litigation*, 181 F.R.D 380, 385 (N.D.Ill. 1998). The issue doesn't preclude certification but does warrant, as in *Wilkerson*, inclusion of the consumer debt limitation in the definition of the class. *Wilkerson*, 200 F.R.D. at 609. With that modification, I am persuaded that the defined class meets the requirements of commonality and typicality as to the stated FDCPA claim under §1692e.

On less substantive grounds, ERC challenges Johnson's limitation of the class to "individuals in Indiana," when her complaint made allegations on behalf of a putative class consisting of individuals in Illinois, Indiana and Wisconsin. [DE 54 at 19; DE 53 at 2; DE 1 at ¶29.] ERC complains that Johnson now limits the geographic scope of the class without any explanation for the change. Plaintiff replies that statewide classes are often certified where a larger class would make recovery even more de minimis. [DE 57 at 16-17.] The "broadest possible class" is not required. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 341 (7th Cir. 1997). To the contrary, the class requirements of Rule 23 "encourage rather specific and limited classes." *Id*. "Furthermore, there is no provision that limits defendants being exposed to more than one FDCPA class action lawsuit."

*Sanders v. Jackson*, 209 F.3d 998, 1002 (7th Cir. 2000). The statewide scope of the class is perfectly acceptable.

ERC's opposes the selection of Johnson as the representative of an Indiana class, when she is now a resident of Illinois. This argument is a non-starter. The ERC mailing on which the FDCPA claim is based was sent to and received by Johnson in Indiana, where she then lived. The issue calls to my attention the ambiguity of the phrase "individuals in Indiana" in Johnson's proposed class definition. To clarify the matter, I will modify the class definition by altering the proposed "all individuals in Indiana" in subsection (a) and adding a new subsection referring to mailing addresses in Indiana.

ERC offers no other arguments specifically disputing the appropriateness of Erin Johnson as representative of the plaintiff class. I am persuaded that Johnson will fairly and adequately protect the interests of the class, as required by Fed.R.Civ.P. 23(a)(4). Johnson proposes her attorneys' firm, Edelman, Combs, Lattuner & Goodwin, LLC, as class counsel. ERC expresses no opposition to that selection. Edelman, Combs is known by me to have more than sufficient experience in handling FDCPA and other consumer rights litigation and serving as class counsel in such cases. Counsel's knowledge of the applicable law, the resources of the firm, and the work counsel has done in identifying and investigating potential claims in the action, all militate in favor of the firm's appointment as class counsel under Fed.R.Civ.P. 23(g)(1).

I agree with Judge Pallmeyer that "the class action is not only the superior method, but the best one for pursuing remedies under the FDCPA." *Wilkerson*, 200

F.R.D. at 610. As the Seventh Circuit has observed, "[b]ecause these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed." *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 880 (7th Cir. 2000). I am satisfied that the class to be certified meets the requirements of Rule 23(a) and (b)(3). With the few changes explained above and shown here, I will certify a class based on plaintiff Johnson's proposal, consisting of:

(a) all individuals ~~in Indiana (b)~~ who were sent a letter by defendant ~~(c)~~ **(b)** offering a settlement **of a debt incurred primarily for personal, family, or household purposes,** ~~(d)~~ **(c)** and stating that "your delinquent account may be reported to the national credit bureaus" ~~(e)~~ **(d)** where the debt was reported to one or more national credit bureaus (Equifax, Trans Union, or Experian) on or before the date in the letter for receipt of the settlement, or first payment thereof ~~(f)~~ **(e)** and the letter was sent at any time during a period beginning July 13, 2016 and ending August 3, 2017 **(f) to a mailing address in the State of Indiana**.

**ACCORDINGLY:**

Plaintiff Erin Johnson's renewed motion for class certification [DE 46] is GRANTED as follows.

A plaintiff class is certified under Fed.R.Civ.P. 23(a) and (b)(3), consisting of:

(a) all individuals who were sent a letter by defendant Enhanced Recovery Company, LLC, (b) offering a settlement of a debt incurred primarily for personal, family, or household purposes, (c) and stating that "your delinquent account may be reported to the national credit bureaus" (d) where the debt was reported to one or more national credit bureaus (Equifax, Trans Union, or Experian) on or before the date in the letter for receipt of the settlement, or first payment thereof, and (e) the letter was sent at any time during a period beginning July 13, 2016 and ending August 3, 2017 (f) to a mailing address in the State of Indiana.

Edelman, Combs, Latturner & Goodwin, LLC is appointed counsel for the class.

**SO ORDERED**.

ENTERED:  May 2, 2018.

_____/s/ Philip P. Simon_____
**UNITED STATES DISTRICT JUDGE**