# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| ERIN JOHNSON, on behalf of plaintiff and a class, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 2:16CV330-PPS |
| ENHANCED RECOVERY COMPANY, LLC, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In this certified class action, the plaintiff class alleges that a dunning letter sent by

defendant Enhanced Recovery Company, LLC was false, misleading or confusing in

violation of the Fair Debt Collection Practices Act. The parties have filed cross-motions

for summary judgment, putting before me the question whether the claim can be

decided as a matter of law based on undisputed facts, without a trial. Neither party has

requested a jury trial, so the matter would ultimately be decided by me even if I found

that material disputes of fact preclude summary judgment.

Summary judgment must be granted when "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes

summary judgment inappropriate: "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

## Undisputed Facts

ERC is an accounts receivable management company that provides debt collection services for its clients, one of which is Sprint, the wireless telephone and internet service provider. [DE 63-1 at 5,6.] ERC received the collection account of plaintiff Erin Johnson with Sprint on March 6 or 7, 2016. [DE 63-1 at 17.] Johnson has never used a cell phone for other than personal use, and therefore the debt on her account with Sprint was not incurred for business purposes. [DE 63-2 at 27.]

ERC sent Johnson three collection letters concerning her Sprint account. The initial collection letter was sent by ERC on March 8, 2016. Here's what it said in relevant part:

> Upon receipt and clearance of $1,094.72 [full balance of debt], your account will be closed and collection efforts will cease.
> This letter serves as notification that your delinquent account may be reported to the national credit bureaus.

[DE 65-1 at 4.]

A second letter dated April 21, 2016 is the focus of this lawsuit. Johnson did not receive the April 21 letter until May 5, 2016. [DE 63-2 at 23.] The pertinent portion of the letter reads:

> Our records indicate that your balance with Sprint remains unpaid; therefore your account has been placed with ERC for collection efforts. We are willing to reduce your outstanding balance by offering discounted options.

Option 1:  Pay the settlement of $875.78, please remit by May 26, 2016.
Option 2:  Pay the settlement of $930.51, payable in 2 monthly payments of $465.26.
Option 3:  Pay the settlement of $985.25, payable in 3 monthly payments of $328.42.

We are not obligated to renew this offer.

**This letter serves as notification that your delinquent account may be reported to the national credit bureaus.**

**Payment of the offered settlement amount will stop collection activity on this matter....**

Unless you dispute the validity of the debt, or any portion thereof, within thirty (30) days after your receipt of this notice, the debt will be assumed to be valid by us.

[DE 65-1 at 5] (emphasis added).   The language I have emphasized in bold is what is at issue in this case.

ERC's Senior Vice President of Compliance, Jason Davis, testified in his deposition that "collection activity" as used in the letter meant that phone calls and letters from ERC about the account would stop upon receipt of the full amount of the debt, and if the debt had already been reported, full payment would result in updated credit reporting to reflect that the debt had been paid in full or settled.  [DE 63-1 at 3, 20.]

Depending on the client, ERC waits between 33 and 45 days after it sends the first collection letter before reporting a debt to credit bureaus.  [DE 63-1 at 12.] According to ERC's policies, Johnson's debt to Sprint became eligible for credit reporting on April 21, 45 days after ERC received the account.  [DE 63-1 at 22.]  ERC

first reported Johnson's Sprint account debt to credit reporting agencies on April 24, 2016, more than a month before the earliest due date of the settlement options offered in the April 21 letter. [DE 63-1 at 19.]

Johnson testified that the April 21 letter was not clear whether her debt would be reported or had already been reported. [DE 63 at ¶36.] Johnson interpreted the April 21 letter to mean that she could prevent the Sprint account from appearing on her credit reports if she made a payment as requested in the letter, or disputed the debt within 30 days as referenced in the letter. [DE 63 at ¶38.] Recall that Johnson received the April 21 letter in early May. And the day after reading the April 21 letter, Johnson checked her credit reports and found that the debt had already been reported. [DE 63-2 at 23.] She then disputed the debt to TransUnion and contacted an attorney. [*Id*. at 23-24.]

A third letter was sent to Johnson dated June 6, 2018. [DE 63-6 at 2.] The June 6 letter is largely identical to the April 21 letter, offering three settlement options (but for lower amounts more favorable to the debtor than previously offered). [*Id*.]

Johnson did not submit any payment on her Sprint account, but on July 24, 2016, ERC sent a "deletion" to the credit bureaus concerning Johnson's account because ERC had received notice of Johnson's "lawsuit or pre-suit" disputing the debt. [DE 63-1 at 19.] Johnson never made any payments to ERC on the Sprint account, but does not dispute the accuracy of the balance due on the account. [DE 63-2 at 25.]

**Discussion**

The claim arises under 15 U.S.C. §1692(e), which prohibits false or misleading representations in connection with debt collection, and offers a non-exhaustive list of more than a dozen examples of impermissible conduct. *Lox v. CDA, Ltd.*, 689 F.3d 818, 822, 827 (7th Cir. 2012). A plaintiff bringing a §1692(e) claim is not required to prove that she was misled to her detriment or that she suffered actual damages. *Lox*, 689 F.3d at 826; *Muha v. Encore Receivable Mgmt., Inc.*, 558 F.3d 623, 629 (7th Cir. 2009).

The determination whether a representation is false or misleading is made from the perspective of what the Seventh Circuit calls an "unsophisticated consumer." "[O]ur test for determining whether a debt collector violated §1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assoc.*, 330 F.3d 991, 995 (7th Cir. 2003). This hypothetical person can be "uninformed, naive [and] trusting" but has basic knowledge about the financial world and the ability to draw logical inferences and conclusions. *Lox*, 689 F.3d at 822 (quoting *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), and *Wahl v. Midland Credit Mgmt.*, 556 F.3d 643, 645 (7th Cir. 2009)). Because the "unsophisticated consumer" standard is not so low as a "least sophisticated consumer" standard, a collection letter is not misleading under §1692e — at least in the Seventh Circuit — unless it is confusing to "a significant fraction of the population." *Lox*, 689 F.3d at 822, quoting *Taylor v. Cavalry Inv.*, L.L.C., 365 F.3d 572, 574 (7th Cir. 2004).

The Seventh Circuit has grouped FDCPA cases alleging deceptive or misleading statements into three categories. The first category of cases involve statements that on their face are plainly not misleading or deceptive. *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009). In that sort of case, dismissal or summary judgment is granted to the defendant without the need for extrinsic evidence of consumer confusion, because even without such evidence the court can determine that "the statement complied with the law." *Id.*

The second category of cases "involves statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer." *Id.* This is the category of claim where evidence is needed to prove that the collection letter would likely deceive or mislead an unsophisticated, but reasonable, consumer. In a case of this kind, the Court of Appeals has held "that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id. See also Lox*, 689 F.3d at 822.

The third type of case described in *Ruth* is a lay down win for the plaintiff. These are the cases where the collection letter includes plainly deceptive language. When confronted with such a letter, a court can grant summary judgment to the plaintiff "without requiring them to prove what is already clear." *Id.*

Recall that Johnson's claim is based on letter that she received from ERC dated April 21 and which she received in early May. This was the second of three letters that

she received from ERC. Johnson argues that this letter falls into the third category of claims as discussed in *Ruth* — that the letter is plainly misleading on its face because it falsely suggested that credit reporting could be prevented by timely payment of an offered settlement amount. [DE 62 at 15.] The argument depends on Johnson's interpretation of the phrase "may be" in the notification "that your delinquent account may be reported to the national credit bureaus," and her interpretation of the subsequent sentence advising that "[p]ayment of the offered settlement amount will stop collection activity on this matter." [DE 71-1 at 2.] ERC contends that the notice is not plainly deceptive or misleading. Instead, ERC argues this is a category 2 case as described in *Ruth* in which Johnson can only prevent summary judgment in ERC's favor by offering extrinsic evidence of consumer confusion or deception, which Johnson admittedly does not have.

Even with the understanding that credit bureau reporting is "collection activity" within the meaning of the letter, the letter does not *plainly* indicate either that credit bureau reporting has not yet taken place or that timely payment will prevent a report of the debt to the national credit bureaus. A consumer might possibly construe the letter to mean those things, but would not necessarily do so. It is also reasonable to construe the letter as intended, namely as a notice that the delinquent account is subject to credit reporting (which could occur or has already occurred), but that payment of an offered settlement will impact any credit reporting (such as by an updated notice that the debt has been resolved) as well as other collection efforts (such as additional dunning

letters).  The "delinquent account" language may reasonably be read as a statement about eligibility for credit reporting but not a statement as to whether or not the account has yet been reported.  That the same notice about reporting to the national credit bureaus appears in all three letters, both before and after the debt was reported, supports this generic interpretation, because the language is then accurate in all three letters both before and after actual reporting took place.

In the second sentence of the challenged language, the phrase "stop collection activity" cannot reasonably be read to mean "*prevent* collection activity" when the language appears in a letter that is itself "collection activity." Like the sentence about credit reporting, this statement about stopping collection activity is accurate in all three letters if understood to mean that resolution of the debt will stop *further* collection activity, which for a debt already reported means an updated report reflecting that the debt has been resolved.  With respect to a debt already reported, because the word "stop" connotes "bring to a halt" rather than "delete" or "reverse,"  reasonable interpretation includes action taken to reflect the satisfaction of the previously reported debt.

Johnson wrongly asserts that ERC ignores the three categories of *Ruth* to contend that extrinsic evidence is always necessary to support a §1692(e) claim.  [DE 75 at 2-3.] To the contrary, ERC expressly acknowledges that extrinsic evidence of consumer confusion is required only in the one category of cases involving language that is not confusing or misleading on its face but might be so to a significant fraction of the

population. [DE 71 at 5, 7.]  Johnson's efforts to avoid an adverse summary judgment depend on her misinterpretation of the standard for the second category of cases.  The first and third categories involve statements that are, on the one hand, *plainly* not deceptive, or, on the other, *plainly* are deceptive, leaving the middle category as the broader one encompassing statements that are only *possibly* deceptive.  But Johnson argues that the 7th Circuit has held that extrinsic evidence is not required of a consumer-debtor where a collection representation is "susceptible to two different constructions, one of which is inaccurate."  [DE 75 at 5.]

*Veach v. Sheeks*, one of the cases Johnson relies on for this proposition, is distinguishable because it involves an actual misrepresentation as to the amount of the debt, not a statement that is merely potentially confusing or misleading.  *Veach*, 316 F.3d at 693.  *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 948 (7th Cir. 2004), also cited by Johnson, affirms the requirement of extrinsic evidence where "it is unclear whether the letter would confuse intended recipients of it."  There, the Seventh Circuit found that no extrinsic evidence was required to "create a triable issue" because to understand the dunning letter's confusing statement about the amount of the debt "one has to be exceptionally ingenious."  *Id. Chuway* doesn't support summary judgment in Johnson's favor here, where it is only "unclear whether the letter would confuse" debtor-recipients.  *Id*.  In addition, both *Veach* and *Chuway* involve representations on a matter – the amount of the debt – as to which the FDCPA contains a specific disclosure requirement.  Claims of noncompliance with such requirements under §1692g(a)(2) --

rather than §1692(e) as here -- do not require extrinsic evidence of confusion. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

Given the parties' rival analyses, the case turns on whether the second category of cases requiring extrinsic evidence encompasses those in which a collection representation is ambiguous and one interpretation is accurate and the other false. Ruling on the previous motion to dismiss, I noted that the word "may" has two different possible meanings in its context here – either "can" or "might in future." [DE 27 at 9.] The former interpretation is espoused by ERC and, as a statement of the debt's eligibility for credit reporting, was true each time it was used in the three collection letters. Johnson points out that if the word "may" is read as "might in future" then the statement, when interpreted in conjunction with the next sentence about payment stopping collection activity, might suggest that timely payment could prevent credit reporting.

Johnson cites *Gonzalez v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011), in support of the assertion that language with two reasonable interpretations, only one of which is accurate, constitutes deception in violation of the FDCPA. First, *Gonzalez* involves not merely misleading information, but a violation of the FDCPA by the implied threat of collection action that is actually prohibited by law. *Gonzalez*, 660 F.3d at 1062. There is no such circumstance here. More importantly, *Gonzalez* is a decision of the Ninth Circuit, applying the "least sophisticated debtor" standard in determining whether collections language is deceptive or misleading. *Id*. at 1061-62. This standard

is different from the Seventh Circuit's "unsophisticated consumer," and inconsistent with this circuit's rubric of three categories of challenged language. This inconsistency was noted by the Seventh Circuit in *Lox. Lox*, 689 F.3d at 822. *Gonzalez* cites decisions of the Third, Sixth and Second Circuits to support its position. *Id*. at 1062. And like *Gonzalez*, these decisions also identify the principle Johnson relies on as flowing from the lower "least sophisticated debtor" standard that is inapplicable in the Seventh Circuit. *Brown v. Card Service Center*, 464 F.3d 450, 454 (3rd Cir. 2006); *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 441 (6th Cir. 2008); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2nd Cir. 1996).

In short, it appears that the Seventh Circuit is out of step with four other circuits in the standard it uses in § 1692(e) cases. But that is neither here nor there for present purposes. In a hierarchical system of courts, my job is to follow what my superiors tell me, and the Seventh Circuit has made it abundantly clear that "the unsophisticated-debtor standard is an objective one and is not the same as the rejected least-sophisticated-debtor standard." *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005).

In sum, I am persuaded that under the Seventh Circuit's approach, ERC is correct when it argues that the two possible interpretations require extrinsic evidence to establish that a significant fraction of the population would be misled by the letter's language. [DE 71 at 5.] Because the language is not *plainly* deceptive, "the plaintiff must come forward with evidence beyond the letter and beyond [her] own self-serving

assertions that the letter is confusing in order to create a genuine issue of material fact[.]" *Durkin*, 406 F.3d at 415. This extrinsic evidence can take the form of an appropriately designed and conducted consumer survey or an appropriate expert witness. *Sims v. GC Services L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (citing *Chuway*, 362 F.3d at 948). Plaintiff lacks any such objective evidence, banking instead on her assertion that the letter "is deceptive on its face." [DE 62 at 15.] Now with all the parties' evidence and argument before me, I reject that position. Because I conclude that the challenged statements in ERC's letter are not plainly misleading or deceptive, Johnson's failure to offer extrinsic evidence that the language would confuse or mislead a significant fraction of the population is fatal to her FDCPA claim. *Sims*, 445 F.3d at 963.

## Conclusion

The delinquency notice provided by ERC presents the "normal case" in which a plaintiff alleging a violation of the FDCPA for confusing or misleading statements "must come forward with more than her own confusion as evidence." *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 503 (7th Cir. 2008). Without a showing by extrinsic evidence that the language Johnson cites "unacceptably increases the level of confusion" such that "a significant fraction of the population would be similarly misled," ERC is entitled to judgment as a matter of law. *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (internal quotation marks omitted). *See also Gruber v. Creditors' Protection Service, Inc.*, 742 F.3d 271, 274 (7th Cir. 2014) ("If not even a significant fraction

of the population would be misled by the debt collector's letter, then dismissal is required." (internal quotation marks omitted)).

ACCORDINGLY:

Plaintiff Erin Johnson's motion for summary judgment [DE 61] is DENIED.

Defendant Enhanced Recovery Company, LLC's motion for summary judgment [DE 64] is GRANTED.

The Clerk shall enter judgment in favor of defendant Enhanced Recovery Company, LLC reflecting this ruling.

SO ORDERED.

ENTERED: January 24, 2019.

_____/s/ Philip P. Simon_____
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**